IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| MICHELLE P. H., § | |
| PLAINTIFF, § | |
| § | |
| V. § | CASE NO. 3:18-CV-2402-L-BK |
| § | |
| COMMISSIONER, § | |
| SOCIAL SECURITY ADMINISTRATION § | |
| DEFENDANT. § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to *Special Order 3*, this case has been referred to the undersigned for pretrial management. Doc. 4. Before the Court are the parties' cross-motions for summary judgment. Doc. 16; Doc. 17. For the reasons that follow, Plaintiff's motion, Doc. 16, should be **DENIED**, Defendant's motion, Doc. 17, should be **GRANTED**, and the Commissioner's decision should be **AFFIRMED**.

**I.
BACKGROUND**

**A.   Procedural History**

Plaintiff seeks judicial review of a final decision by the Commissioner denying her application for disability and disability insurance benefits under the Social Security Act ("the Act"). Doc. 1 at 2. After Plaintiff's claims were denied at all administrative levels, she appealed to this Court pursuant to 42 U.S.C. § 405(g). Doc. 13-1 at 31-49; Doc. 13-1 at 5-7.

**B.      Factual Background**

Plaintiff filed for benefits in July 2014 claiming that she became disabled earlier that month due to lupus, arthritis, and high blood pressure. Doc. 13-1 at 74. She was 44 years old on her alleged disability onset date and has been unemployed since July 2014. Doc. 13-1 at 74, 176.

**1.      Medical Evidence[1]**

During a medical visit in September 2014, it was noted that Plaintiff had "a history suggestive of anxiety." Doc. 13-1 at 401-03. In March 2015, Plaintiff was given prescriptions for refills of Lexapro to treat depression and anxiety. Doc. 13-1 at 438. At a visit in May 2015, Dr. Sean Townsend indicated that Plaintiff was "[n]egative for depression" but was "nervous/anxious." Doc. 13-1 at 536. He also noted that she had "normal mood and affect." Id.

In August 2015, Plaintiff reported to Dr. Daniel Pearson, a consulting neuropsychiatrist, that she could not work or hold a job because she cried "all the time." Doc. 13-1 at 462. She stated that she was significantly depressed and had panic attacks and problems with her memory, appetite, energy, and focus. Doc. 13-1 at 462-63. Dr. Pearson observed that Plaintiff was oriented to person, place, and time, and able to live in an unsupervised manner, care for herself, drive unaccompanied, perform light chores, shop, handle finances, and occasionally visit with friends and attend church. Doc. 13-1 at 464-65. Ultimately, Doctor Pearson diagnosed Plaintiff with major depression, generalized anxiety, panic disorder, systemic lupus, financial problems, and serious symptoms with serious impairment in both social and occupational functioning. Doc. 13-1 at 465.

---

[1] Because Plaintiff's claims focus solely on the Administrative Law Judge's consideration and determination of her mental health impairments, the Court only summarizes here the medical evidence of record relating to Plaintiff's mental health.

At a follow-up medical visit in January 2016, it was noted that Plaintiff was alert and oriented, had "intact judgment and insight," "no depressed mood," and was "doing well." Doc. 13-1 at 539, 541. At a visit in March 2016, Dr. Murad noted that Plaintiff had normal mood and affect. Doc. 13-1 at 552. Nurse Chari made a similar notation at another appointment the same month, observing also that Plaintiff's "behavior is normal." Doc. 13-1 at 557. Likewise, at an April medical visit, it was documented that Plaintiff was "oriented to person, place, and time" and appeared "well-developed and well-nourished." Doc. 13-1 at 560.

## 2. Hearing Testimony

In May 2017, a hearing was held before an Administrative Law Judge ("ALJ"), at which, Plaintiff testified that she quit high school in the ninth grade but can read and write at a higher level than the ninth grade. Doc. 13-1 at 58. She also testified that she has past work experience as a packer for a photo processing laboratory, warehouse packer, and office receptionist. Doc. 13-1 at 58-59. She averred that she has "good days, and . . . bad days" due to depression and family problems and trouble sleeping due to fear following a mild stroke and heart attack. Doc. 13-1 at 60. Plaintiff testified that she lives with her father and stepmother and that, during the day, she does "[w]hatever [she] can do to help" her father—including washing dishes and "clean[ing] the counter." Doc. 13-1 at 63.

A Vocational Expert ("VE") testified by telephone to the exertional classifications of Plaintiff's past jobs as (1) hand packager - medium, shipping clerk - medium, and office receptionist - sedentary. Doc. 13-1 at 64. Based on the hypothetical posed by the ALJ, the VE also testified that a person of Plaintiff's age and educational background, who was limited to sedentary work and a variety of postural, manipulative, and mental limitations, could not perform Plaintiff's past relevant work of hand packer, shipping clerk, or receptionist, but could perform

other work that existed in significant numbers in the national and regional economies, including bench hand, waxer, and table worker. Doc. 13-1 at 63-66.

### 3. ALJ's Opinion

The ALJ found that Plaintiff had the severe impairments of systemic lupus with nephritis, osteoarthritis, pulmonary disease, coronary artery disease with a history of myocardial infarction, and a history of cerebral vascular accident, but that she did not have an impairment or combination of impairments that met or medically equaled any Listed Impairment. Doc. 13-1 at 37. The ALJ thus concluded that Plaintiff had the RFC to perform sedentary work but limited her to (1) occasional balancing, stooping, crouching, and stair or ramp climbing; (2) frequent reaching, handling, fingering, and feeling; (3) never operating foot controls, crawling, kneeling or climbing ladders, ropes, or scaffolds; (4) exposure to weather, cold/hot/wet humid environments, vibration, moving/mechanical parts, electric shock, hazardous/exposed places, radiation, explosives, fumes, odors, dusts, gases, and poor ventilation for no more than ten percent of the time; and (5) occasional interaction with the public, co-workers, and supervisors. Doc. 13-1 at 41. The ALJ also found that Plaintiff is able to perform simple work, carry out simple one or two-step instructions, deal with standardize situations with occasional or no variables in situations encountered on the job, perform basic arithmetic, and read, write, and speak in simple sentences using normal word order. Doc. 13-1 at 41. Based on this RFC, the ALJ concluded that Plaintiff is unable to perform any past relevant work but is able to perform jobs that exist in the national and regional economy; thus, she was not disabled under the Act. Doc. 13-1 at 47-49.

# II.
# APPLICABLE LAW

An individual is disabled under the Act if, *inter alia*, she is "[unable] to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" which has lasted or can be expected to last for at least twelve months. 42 U.S.C. § 423(d)(1)(A). In determining whether an individual is disabled, the Commissioner uses a five-step inquiry: (1) an individual who is working and engaging in substantial gainful activity is not disabled; (2) an individual who does not have a "severe impairment" is not disabled; (3) an individual who "meets or equals a listed impairment in Appendix 1" of the Regulations will be considered disabled without consideration of vocational factors; (4) if an individual is capable of performing her past work, a finding of "not disabled" must be made; (5) if an individual's impairment precludes her from performing his past work, other factors including age, education, past work experience, and RFC must be considered to determine if any other work can be performed. *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (per curium) (summarizing 20 C.F.R. §§ 404.1520(b)-(f), 416.920 (b)-(f)).

Under the first four steps of the analysis, the burden of proof lies with the claimant. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). The analysis terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled. *Id.* If the claimant satisfies her burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant can perform. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). This burden may be satisfied either by reference to the Grid Rules, vocational expert testimony, or other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

5

Judicial review of the Commissioner's decision is limited to whether the Commissioner's position is supported by substantial evidence and whether the Commissioner applied proper legal standards in evaluating the evidence. *Greenspan*, 38 F.3d at 236; 42 U.S.C. §§ 405(g), 1383(C)(3). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant and sufficient evidence as a reasonable mind might accept as adequate to support a conclusion. *Leggett*, 67 F.3d at 564. Under this standard, the reviewing court does not reweigh the evidence, retry the issues, or substitute its own judgment, but rather, scrutinizes the record to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236.

## III.
## ANALYSIS

In considering the parties' summary judgment arguments, the Court has relied upon their assessment of and citation to the evidence of record. The Court is not under any obligation to probe the record to find supporting evidence for one side or the other. *See* FED. R. CIV. P. 56 (the movant and opponent of a motion for summary judgment must support their positions by "citing to particular parts of materials in the record"); *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006) (the court has no obligation under Rule 56 "to sift through the record in search of evidence to support a party's opposition to summary judgment").

**A.     The ALJ's Determination of Mental Functional Limitations and Resulting RFC Are Supported by Substantial Evidence**

Plaintiff argues that the ALJ erred because, after finding that "Plaintiff has significant work-related limitations in each of the four functional categories deemed by the Commissioner to be essential to the performance of work-related activities," "the ALJ failed to incorporate such

6

limitations into his residual functional capacity ["RFC"] assessment," or include them in the ALJ's hypothetical to the vocational expert ["VE"].[2] Doc. 16 at 4.

Utilizing a "special technique," an ALJ must evaluate the degree of functional limitation resulting from a claimant's medically determinable mental impairments under four broad functional areas: the ability to (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself. 20 C.F.R. § 404.1520a(b)-(c). Each area is rated on a five-point scale: "[n]one, mild, moderate, marked, and extreme. The last point on the scale represents a degree of limitation that is incompatible with the ability to do any gainful activity." 20 C.F.R. § 404.1520a(b)(4). A rating of none or mild generally results in a finding that the impairment is not severe. However, if the ALJ rates the impairment as otherwise severe, he/she then must determine whether the impairment equals or meets any Listed impairment and, if it does not, the ALJ must conduct an RFC assessment.

As Plaintiff concedes, Doc. 16 at 6, the ALJ rated Plaintiff's medically determinable mental impairments as moderate in each of the four broad areas after noting that neither met the requirements for a rating of marked or extreme limitation. Doc. 13-1 at 39-40. Furthermore, the ALJ's opinion reveals that the moderate ratings were made only after a detailed discussion of the information found in Plaintiff's medical records, with reference to the specific exhibits, and Plaintiff does not suggest that the ALJ failed to consider any relevant medical evidence. After the ALJ determined that Plaintiff's mental impairments do not equal or meet any Listing, he

---

[2] An RFC is an assessment, based on all the relevant evidence, of a claimant's ability to do work on a sustained basis in an ordinary work setting despite his impairments. 20 C.F.R. §§404.1545(a), 416.945(a). RFC refers to the most a claimant can do despite his physical and mental impairments. *Id*. The RFC is considered by the ALJ, along with the claimant's age, education, and work experience, in determining whether a claimant can work. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

7

considered the impairments in his RFC determination: "Mentally, [Plaintiff] is limited to occasional interaction with the public, co-workers and supervisors." *Id.*

Plaintiff also argues that the ALJ erred because, after finding she was moderately limited in her ability to adapt or manage herself, the ALJ's did not specifically address in the RFC Plaintiff's ability to manage psychologically based symptoms, respond to demands, adapt to changes, make plans independently of others, or maintain personal hygiene and attire. Doc. 16 at 8. The record belies that argument, however.

In determining that Plaintiff had a moderate functional limitation in that category, the ALJ noted that: (1) Plaintiff is affected by anxiety and depression; (2) Plaintiff became tearful during her independent consultative examination and complained of frequent crying; (3) Plaintiff had been diagnosed with a panic disorder based on her reports of panic attacks and anxiety; and (4) a trigger for Plaintiff's symptoms include financial issues and marital discord. Doc. 13-1 at 40, 464-65. The ALJ also cited to evidence in the record that revealed that Plaintiff nevertheless is able to visit friends, attend church, live unsupervised, care for her personal and hygienic needs, drive unaccompanied, handle her finances, and shop. Doc. 13-1 at 40, 464-65. Additionally, the ALJ correctly noted, as related to the degree of severity of Plaintiff's mental impairments, "she has never been hospitalized for mental health reason[s] and has not engage[d] in specialized mental health treatment during the relevant period."

The RFC determination falls solely to the ALJ, who alone is responsible for resolving any conflicts in the evidence. *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001) (per curiam). Based on the evidence and the ALJ's finding of moderate functional limitation in this broad area, the Court finds no error.

Plaintiff subsequently argues that the ALJ erred because in his hypothetical question to the VE he "did not further explain his conclusions with regard to each of the categories," and, thus, "did not include all of the functional limitations which the ALJ found to exist." Doc. 16 at 8. But as Defendant correctly notes, the ALJ was not required to include into his hypothetical question any specific language regarding the categorical limitations so long as the ALJ considered such limitations in reaching his RFC, which he did. Doc. 17 at 5; *see, e.g.*, *Smith v. Colvin*, No. 3:13-CV-1884-N-BN, 2014 WL 1407437, at *5 (N.D. Tex. Mar. 24, 2014) (Horan, J.), *adopted by* 2014 WL 1407440 (Godbey, J.) ("The record reflects that the ALJ considered the limitations in concentration, persistence, or pace when determining Plaintiff's RFC . . . [t]he ALJ was not required to expressly include a limitation for concentration, persistence, or pace in her hypothetical to the VE."). Here, the ALJ's opinion includes a thorough discussion of each of the four broad functional areas.

Plaintiff also appears to make much ado about the ALJ's RFC finding that she can understand and follow one and two-step instructions, arguing that the ALJ's finding that Plaintiff was "significantly limited" in understanding and remembering conflicts with the ALJ's RFC determination that Plaintiff can carry out one- or two-step instructions.[3] Doc. 16 at 7-8.

The ALJ was more specific in his discussion of the hypothetical with the VE of his intent to limit Plaintiff's RFC to "the very lowest level as far as reasoning, math and language is concerned":

> Reasoning at level one would only include simple, routine repetitive one, two-step tasks within standardized situations, and math, language[. L]evel one basically equates to the first to third grade level. This is due to a combination of issues,

---

[3] Plaintiff does not cite to any place in the record where the ALJ found that Plaintiff was "significantly limited" in her ability to understand, remember, and apply information; the Court is under no obligation to probe the record for such a finding. *Adams*, 465 F.3d at 164.

9

> educational, psychological, all of which can have negative affects on concentration, persistence, pace and memory.

Doc. 13-1 at 64-65. Although Plaintiff quibbles with the ALJ's finding that Plaintiff could operate at that level, specifically understanding and following one and two-step tasks, she points to no evidence that contradicts that finding. Again, the ALJ is solely responsible for determining the RFC from the evidence.

Plaintiff also contends that the ALJ erred because in the hypothetical posed by the VE, he "did not further explain his conclusions with regard to each of the categories [relating to mental limitations]," and, thus, "did not include all of the functional limitations which the ALJ found to exist." Doc. 16 at 8. However, as Defendant points out, Doc. 17 at 5, the ALJ was not required to include in his hypothetical specific language regarding the categorical limitations, so long as the ALJ considered such limitations in determining the RFC. *See, e.g.*, *Smith v. Colvin*, No. 3:13-CV-1884-N-BN, 2014 WL 1407437, at *5 (N.D. Tex. Mar. 24, 2014) (Horan, J.), *adopted by* 2014 WL 1407440 (Godbey, J.) ("The record reflects that the ALJ considered the limitations in concentration, persistence, or pace when determining Plaintiff's RFC . . . [t]he ALJ was not required to expressly include a limitation for concentration, persistence, or pace in her hypothetical to the VE."). In his opinion, the ALJ thoroughly discusses his consideration of each of the four broad functional areas. *See* Doc. 13-1 at 39-41.

**B. No Reversible Error Resulted from Conflicts in the VE testimony**

Plaintiff also argues that the ALJ erred because there exists a "direct and obvious conflict between the testimony of the VE and the job requirements set forth in the DOT." Doc. 16 at 9. Plaintiff reasons that a conflict exists because the ALJ limited Plaintiff to "no more than frequent reaching, handling, fingering, and feeling," but relied on the job of bench hand—which requires

10

constant reaching and handling—and "never questioned the VE as to whether his testimony was consistent with the DOT, as he is required to do." Doc. 16 at 11.

SSR 00-4p establishes the ALJ's affirmative duty to bring to light and explain any "apparent unresolved conflict" between the VE's testimony and the DOT. SSR 00-4P, 2000 WL 1898704. When there exists such a conflict, the ALJ must—on the record at the hearing—elicit a reasonable explanation for the discrepancy. *Id.* However, an unresolved conflict in the evidence is no basis for reversal unless the claimant can show that she was prejudiced by the alleged error. *DeLeon v. Barnhart*, 174 F.App'x 201, 203 (5th Cir. 2006) (per curiam) (citing *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1998) (per curium)). A claimant establishes the requisite prejudice by showing that, "if the ALJ had fully developed the record," additional evidence would have been produced that "might have led to a different decision." *Newton v. Apfel*, 209 F.3d 448, 458 (5th Cir. 2000).

Here, Plaintiff cannot establish prejudice. Defendant concedes that there is a conflict between the VE testimony regarding the availability of the job of bench hand and the ALJ's hypothetical RFC, and that the ALJ failed to elicit any explanation for the conflict. Doc. 13-1 at 63-69. However, as Defendant correctly asserts, the "substantial evidence supports the ALJ's reliance on the VE's testimony for the remaining two jobs of waxer and table worker." Doc. 17 at 6. The VE testified that given the ALJ's RFC, Plaintiff could perform the jobs of bench hand, waxer, and table worker. Doc. 13-1 at 65. The ALJ made the same finding in his subsequent written opinion. Doc. 13-1 at 48. Even if the VE's testimony and the ALJ's finding regarding the availability of the bench hand job is excluded, the testimony and finding of the availability of two other jobs remains. *Cf Owen v. Astrue*, No. 4:10-CV-476-Y, 2011 WL 3348064, at *8 (N.D. Tex. May 12, 2011) (Cureton, J.), *adopted by* 2011 WL 3347921 (Means, J.) (finding that a

11

plaintiff was prejudiced by an ALJ's violation of SSR 00-4p where the record "did not esetablish that [other jobs] exist in sufficient numbers in the national economy such that the ALJ would have arrived at the same decision" despite the conflict). Consequently, substantial evidence supports the ALJ's finding that there is other gainful employment available in the national economy that Plaintiff can perform, and Plaintiff was not prejudiced by the unresolved conflict in the VE's testimony.

Plaintiff also contends that the ALJ erred by relying upon the jobs of waxer and table worker because such jobs are allegedly inconsistent with Plaintiff's education level. Doc. 16 at 12. Specifically, Plaintiff reasons that while her education level may be consistent with the jobs of waxer and table worker pursuant to the DOT and VE's testimony, it is not consistent with the Occupational Outlook Handbook ("OOH"). Doc. 16 at 13-16. Defendant counters that the Commissioner "has specifically taken administrative notice of the DOT as a primary source of job data" but has not done so with the OOH. Doc. 17 at 7.

Plaintiff fails to provide any authority for the proposition that an ALJ errs when there exists a conflict between a plaintiff's ability to perform a job under the DOT and a plaintiff's ability to perform that job under the OOH, or that an ALJ has to consider the OOH at all. Indeed, SSR 00-4p "only requires the ALJ to resolve apparent conflicts between the VE testimony and the DOT, and it does not additionally require resolution of a 'possible conflict' with the OOH." *Grimes v. Berryhill*, No. 3:16-CV-3280, 2018 WL 1210533, at *1 (N.D. Tex. Mar. 8, 2018) (Ramirez, J.) (citing SSR 00-4p, 2000 WL 1898704, at *2). Thus, Plaintiff's argument fails.

12

# IV.
# CONCLUSION

For the foregoing reasons, Plaintiff's *Motion for Summary Judgment*, Doc. 16, should be **DENIED**, Defendant's *Motion for Summary Judgment*, Doc. 17, should be **GRANTED**, and the Commissioner's decision should be **AFFIRMED.**

**SIGNED** August 23, 2019.

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND
NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); F<span/>ED. R. C<span/>IV. P. 72(b). An objection must identify the specific finding or recommendation to which objection is made and state the basis for the objection and where in the magistrate judge's report and recommendation the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996), *modified by statute*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).